UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| LASHUNDA RENEE (DRAPER) DARNELL | * | CIVIL ACTION NO. 07-1404 |
| VERSUS | * | |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

On November 13, 2003, Lashunda Darnell filed the instant application for Title II Childhood Disability Benefits. (*See*, Tr. 15). She alleged disability since November 1, 1999, due to frequent hospital visits, dizziness, stomach pains, and high glucose levels. (Tr. 67). The claim was denied at the initial stage of the administrative process. (Tr. 35-36, 45-48). Thereafter, Darnell requested and received an April 12, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 205-236). However, in a June 13, 2005, written decision, the ALJ determined that Darnell was not disabled under the Social Security Act, finding at Step Five of the sequential evaluation process that she was able to perform work that exists in substantial numbers in the

national economy. (Tr. 12-24). Darnell appealed the adverse decision to the Appeals Council which granted her request for review, and notified her on December 22, 2006, that it intended to find her disabled with an onset date of March 28, 2005. (*See*, Tr. 9).[1] The Council afforded Darnell and her representative 30 days to submit any comments or new and material evidence. *Id*. On June 15, 2007, the Appeals Council acted upon its stated intentions and issued a partially favorable decision, finding Darnell disabled beginning March 28, 2005, but not before that date. (Tr. 5-11). The Appeals Council's decision became the final decision of the Commissioner. (Tr. 4).

On August 24, 2007, Darnell sought review before this court. She alleges the following errors:

1) the Appeals Council erred by failing to consider new evidence and by failing to provide claimant's counsel with a copy of the agency file and recording of the hearing; and

2) the ALJ erred by selectively emphasizing evidence that plaintiff failed to comply with treatment to support his determination that her allegations were not credible.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.

---

[1] Following the adverse decision by the ALJ, Darnell filed a subsequent application for Childhood Disability Benefits on July 15, 2005. (*See*, Tr. 10). Apparently, the state agency found her disabled as of March 28, 2005, due to severe major depressive disorder with psychotic features and anxiety disorders. *Id*. Thus, the Appeals Council's decision essentially reconciled Darnell's prior application with the determination by the state agency on the subsequent application.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. §

423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520. The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding

is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

At the outset, the court observes that as a full-time student, Darnell received Childhood Disability Benefits, regardless of alleged disability, through May 2004. *See*, 42 U.S.C. § 402(d); 20 C.F.R. § 404.350 (Tr. 56, 73, 101).[2] Because the Appeals Council found Darnell disabled and entitled to benefits as of March 2005, the instant case addresses plaintiff's claim for benefits from June 2004 until March 2005 – a period of up to ten months.

**I. Due Process**

Following the ALJ's June 2005 decision, Darnell retained current counsel who sent an August 1, 2005, letter to the Appeals Council and asked the Council to "review [the June 13, 2005] decision, pursuant to 20 CFR § 416.1470, to determine whether it includes an abuse of discretion or error of law, and whether the action, findings, or conclusion in it are not supported by substantial evidence." (Pl. Brief, Exh. A [doc. # 15-2]). Counsel also requested copies of the documents and written evidence upon which the ALJ's decision was based and a copy of the hearing transcript. *Id*. The letter further sought a 30 day extension of time from when counsel received the "tape . . . within which to complete a brief and submit additional evidence." *Id*.

On August 5, 2005, Darnell's counsel sent the Appeals Council a designation of representation form and fee agreement. (Pl. Brief, Exh. B [doc. # 15-2]). Ten months later, on June 7, 2006, counsel forwarded copies of Darnell's recent medical records to the Appeals Council. *Id*., Exh. C. On January 22, 2007, in his final missive, counsel reminded the review

---

[2] Plaintiff's counsel confirmed to court staff that his client received benefits during this period.

5

board that he had yet to receive a copy of the agency file and the audio recording of the hearing. *Id.*, Exh. D. He reiterated that he needed 30 days upon receipt of these items to submit his brief. *Id.* Five months later, however, the Appeals Council issued its partially favorable decision, without having provided the requested documents and without having acted upon counsel's request for an extension of time to file his brief.[3]

The regulations expressly provide that a claimant may "request and receive copies or a statement of the documents or other written evidence upon which the hearing decision or dismissal was based and a copy or summary of the transcript of oral evidence." 20 C.F.R. § 404.974.[4] Also, upon request, the Appeals Council will afford the claimant a "reasonable opportunity to file briefs or other written statement about the facts and law relevant to this case." 20 C.F.R. § 404.975.

While the Fifth Circuit requires the Commissioner to heed his own procedures and regulations, the claimant must still establish that she was prejudiced by the agency's failure to follow a particular rule. *See, Shave v. Apfel*, 238 F.3d 592, 596-597 (5th Cir. 2001) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000)). Similarly, to the extent that plaintiff contends that the Commissioner's errors implicated her constitutional rights, she must demonstrate resulting prejudice. *See, Curtis v. Commissioner Social Sec. Admin.*, 2008 WL 919692 (W.D. La. Feb. 27, 2008) (citing *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir.1981)

---

[3] Plaintiff's counsel has adduced evidence that his letters and evidence were delivered to the Appeals Council. (*See*, Pl. Exhs. A-C). In its decision, however, the Appeals Council stated that it had not received any comments or evidence. (Tr. 9).

[4] However, the claimant is responsible for the cost of the copies, unless she establishes a good reason why she should not have to pay. *Id*.

(complainant must show substantial prejudice in order to prove denial of due process in an administrative proceeding)).

Here, the evidence that Darnell submitted to the Appeals Council, and which the Council apparently failed to consider, all post-date the relevant period. (*See*, Pl. Brief, Exh. C. [doc. # 15-2]). There is no indication that the evidence addressed Darnell's impairments prior to March 28, 2005. *See, Newton*, 209 F.3d at 459-460 (plaintiff not prejudiced by Appeals Council's failure to consider evidence because evidence did not address relevant period). Indeed, plaintiff did not submit the overlooked evidence to this court because she conceded that her argument does not depend upon it. (Pl. Brief, pg. 3, n3). Insofar as plaintiff contends that there was additional evidence relevant to the period at issue which she was unable to submit to the Appeals Council, she, again, has not adduced that evidence here. Without having seen the evidence that plaintiff intended to submit, any alleged injury suffered by plaintiff remains purely speculative and unsubstantiated.

Plaintiff further complains that she was unable to present the argument to the Appeals Council that she now advances as an additional basis for reversal before this court. As discussed below, however, plaintiff's substantive argument does not compel reversal. Moreover, the Appeals Council reviews ALJ decisions in their entirety, and likely "does not depend much, if at all, on claimants to identify issues for review." *Sims v. Apfel*, 530 U.S. 103, 110-112, 120 S.Ct. 2080, 2085- 2086 (2000) (citation omitted).[5] Accordingly, plaintiff has failed to demonstrate that she was materially prejudiced by the Appeals Council's shortcomings in this case. *See, Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings

---

[5] Proceedings before the Appeals Council are non-adversarial. *Id*.

is not required); *King v. Barnhart*, 2002 WL 598529, *6 (N.D. Ill. Apr. 18, 2002) (Appeals Council's failure to afford claimant opportunity to obtain exhibits and a tape of the hearing and to submit additional briefs was harmless error).

## II. Credibility and Residual Functional Capacity Assessment

The Commissioner determined at Step Two of the sequential evaluation process that Darnell suffered from severe impairments of Type I diabetes mellitus and asthma. (Tr. 10). He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 10). The Commissioner next determined that prior to March 28, 2005, Darnell retained the residual functional capacity to perform light work with the need to alternate sitting and standing and the need to avoid even moderate exposure to environmental pollutants such as dust, fumes, or odors. (Tr. 10).[6]

Plaintiff contends that at the heart of the Commissioner's determination was his finding that Darnell was not compliant with her medication. However, the Commissioner's decision(s) reflects that he assigned greater weight to the findings and opinions expressed by the treating and

---

[6] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

examining physicians in lieu of plaintiff's self-described limitations. (Tr. 20-21); *see, Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).[7] Moreover, it is not even clear that plaintiff's alleged failure to take her insulin unduly influenced the physicians' assessments. For example, on March 17, 2004, Charles Werner, M.D. examined Darnell at the request of Disability Determination Services. (Tr. 178-179). Upon examination, Darnell's gait and station were within normal limits. *Id*. She could squat and stand on her toes. *Id*. Her grip strength was 5/5, with normal dexterity and grasp. *Id*. She exhibited no muscle atrophy or spasms, and her sensory examination was normal. *Id*. Werner queried whether Darnell was actually taking her insulin due to her frequent admissions for diabetic ketoacidosis. *Id*. Nonetheless, he found that she had no significant limitations, and could sit, stand, and walk for a full eight hour workday. *Id*. She could also frequently lift, push, and pull 15 pounds. *Id*. She had no other limitations. *Id*.

On January 5, 2005, Darnell's treating physician, Wendy Moses, M.D., wrote that Darnell had a poor understanding of her Type I diabetes, and in the past, had been noncompliant with medications and follow-up appointments. (Tr. 182). Darnell experienced episodes of uncontrolled hyperglycemia and diabetic ketoacidosis due to a combination of noncompliance, infections, stressors, and medication. *Id*. Moses stated that the foregoing conditions would

---

[7] As pointed out by plaintiff, the Appeals Council decision found that Darnell's subjective complaints were not fully credible for the reasons set forth in the "body of this decision." (Tr. 10). Although there is no discussion of plaintiff's credibility set forth in the body of the decision, the Appeals Council did adopt the ALJ's statements regarding, *inter alia*, the issues in the case, the evidentiary facts, and his residual functional capacity assessment. (Tr. 9). Thus, the court may properly look to the ALJ's decision in this regard.

preclude Darnell from holding down a full time job unless special accommodations were provided, such as breaks to assess glucose levels and to eat snacks, and the flexibility to miss days from time to time. *Id*.[8] Contributing factors were migraine headaches, asthma/allergies, depression, and diabetic peripheral neuropathy. *Id*.

On February 3, 2005, Robert Long, M.D. wrote that he had been treating Darnell for asthma and chronic respiratory difficulties. (Tr. 195). He recommended that, at that time, "she not work in her current surroundings, as this contributes to her respiratory difficulties." *Id*. Dr. Long, however, did not indicate that Darnell's respiratory problems precluded all work – only the work that she was purportedly performing at that time.[9]

On April 8, 2005, plaintiff's obstetrician, Gregory Blanton, M.D., wrote that Darnell was a high risk obstetrical patient due to her Type I diabetes. (Tr. 202). He stated that she was unable to work throughout her pregnancy and 12 weeks post partum. *Id*.[10] After the pregnancy and post partum care, however, and despite his awareness of Darnell's history of poor glycemic control,[11] Blanton saw no medical reason that would prevent her from returning to work. *Id*. In other words, when plaintiff was not pregnant, Dr. Blanton believed that she was capable of

---

[8] There is no indication that Moses's limitations were incompatible with the three breaks that workers customarily enjoy during a workday. *See*, SSR 96-9p (describing breaks in a workday). Moreover, the vocational expert testified that a worker could miss up to one day per month without affecting her ability to perform full time work. (Tr. 234-235).

[9] There is no evidence that Darnell was working in February 2005.

[10] Of course, statements that a claimant is "disabled" or "unable to work" are afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

[11] *See*, Tr. 203-204.

working. *Id*.¹²

Despite the substantial medical evidence supporting the Commissioner's credibility determination and associated residual functional capacity assessment,¹³ plaintiff doggedly maintains that the ALJ indirectly determined that she was non-compliant with her prescribed treatment, and therefore, should have afforded her an opportunity to explain why she was non-compliant. *Alexander v. Astrue*, 2008 WL 918527 (W.D. La. Mar. 31, 2008). Yet even if, for the sake of argument, the ALJ's decision was premised upon plaintiff's non-compliance, Darnell was well aware that her non-compliance was at issue, and was afforded an opportunity to address the matter. At the hearing, plaintiff's representative acknowledged that there was medical evidence which raised doubts concerning Darnell's fidelity to her prescribed treatment, and specifically asked both Darnell and her mother whether Darnell took her medication as prescribed. (Tr. 221-222, 227). They both replied that she did. *Id*. Having denied under oath that she was non-compliant, it would be futile to afford plaintiff the opportunity to explain why she was non-compliant.

For the foregoing reasons, the undersigned finds that the Commissioner's decision is supported by substantial evidence and remains free of legal error.¹⁴ Accordingly,

---

¹² On April 15, 2005, Dr. Blanton opined that migraines caused Darnell's hyperglycemia, rather than non-compliance with medication and diet. (Tr. 199). However, Blanton did not re-visit his opinion one week earlier regarding plaintiff's capacity for work. *Id*.

¹³ *See, Story v. Astrue*, Docket No. 08-10234 (5th Cir. Sept. 30, 2008) (unpubl.) (ALJ fulfilled obligation to make explicit credibility findings when he considered claimant's allegations and found them inconsistent with the medical evidence).

¹⁴ Plaintiff does not allege any errors with the remaining steps of the sequential evaluation process.

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of February, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE